FRANK B. FOSTER *vs.* SHUBERT HOLDING COMPANY & others.

Suffolk.     May 3, 1944. — June 6, 1944.

Present: FIELD, C.J., QUA, RONAN, & WILKINS, JJ.

*Monopoly. Restraint of Trade. Theatre. Equity Pleading and Practice,* Bill, Amendment.

Statement by RONAN, J., as to the nature of a theatre ticket.

A demurrer properly was sustained to a bill in equity by a dealer engaged in reselling theatre tickets against another such dealer and proprietors of theatres, containing allegations that the defendant dealer had refused to sell tickets to the plaintiff in accordance with a former arrangement, that the defendant proprietors sold tickets to the defendant dealer and refused to sell them "in the same manner" to the plaintiff, that the defendants had agreed among themselves to discriminate against the plaintiff, to refuse to sell him tickets, to drive him out of business and to stifle competition, and that the defendants had created a monopoly in the resale of tickets to the injury of the plaintiff and prejudice of the public in violation of the common law and of G. L. (Ter. Ed.) c. 93, § 2, but without specific allegations to support the conclusion that the public were prejudiced by acts of the defendants or that the defendants had in fact refused to sell tickets to the plaintiff or to deal with him, or that the refusal to sell to the plaintiff "in the same manner" as to the defendant dealer was arbitrary, unreasonable or discriminatory.

A violation of G. L. (Ter. Ed.) c. 140, § 185A, as amended by St. 1941, c. 247, was not shown by an allegation merely that persons "maintaining theatres producing theatrical performances" had a financial interest in a concern engaged in the business of selling theatre tickets.

The granting or refusal of leave to amend a bill in equity rests in the sound judicial discretion of the trial court.

BILL IN EQUITY, filed in the Superior Court on August 28, 1941.

The defendants demurred to the bill. The demurrers were sustained "without leave to amend," and the bill was dismissed, by decrees entered by order of *Hammond*, J. The plaintiff appealed.

*G. L. Rabb*, for the plaintiff.

*C. Hamilton*, for the defendants Shubert Holding Company and others.

*H. W. Cole*, for the defendant Herrick's, Inc.

RONAN, J. The plaintiff, a licensed dealer in the business of reselling tickets to theatrical and other public amusements, brings this bill of complaint in which he alleges that all the defendants except the defendant Herrick's, Inc., hereafter called Herrick, are "engaged in the business of maintaining theatres producing theatrical performances" and control nearly ninety per cent of all the theatres in Boston producing stage plays; that Herrick is engaged in the ticket selling business; that all the defendants are dominated and controlled by the defendant Select Theatres Corporation, hereafter called Select; that in consequence of such control and domination all the defendants are acting in accordance with an agreement "to control the resale of tickets of admission to the above mentioned performances, and have created a monopoly in the same, which combination, arrangement and agreement has resulted in a practice whereby the supply and price of said tickets of admission are restrained or prevented and whereby the free pursuit of the plaintiff's business is unreasonably restrained and prevented and the public is prejudiced, all in violation of General Laws, Chapter 93, Section 2 and the common law."

The plaintiff further alleges that beginning in April, 1939, he was required to purchase tickets from Herrick provided he agreed to resell them at a price in advance of that permitted by G. L. (Ter. Ed.) c. 140, § 185D; that shortly prior to filing the bill of complaint, Herrick had established a place of business near that of the plaintiff and Herrick has since refused to sell tickets to the plaintiff in accord-

ance with the practice in use in April, 1939; and that all the other defendants continue to sell tickets to Herrick and "refuse to sell tickets for resale in the same manner to the plaintiff." Upon information and belief it is alleged that the defendants have agreed among themselves to discriminate against the plaintiff, to refuse to sell him tickets for resale, to make it impossible for him to continue in business, to force him out of business, and to bring about his financial ruin.

The bill also alleges that the defendant Select, its officers and principal stockholders, and all the other defendants have a financial interest in Herrick in violation of G. L. (Ter. Ed.) c. 140, § 185A, as amended by St. 1941, c. 247.

It is finally alleged that it is the intent and purpose of the defendants to stifle and prevent fair competition in the resale of theatre tickets and to drive the plaintiff out of business, which "necessarily prejudices the public and unduly, unreasonably and exorbitantly profits the defendants." The plaintiff appealed from decrees sustaining the demurrers of the defendants and dismissing the bill.

The plaintiff contends that the bill sets forth the creation and maintenance by the defendants of a monopoly at common law and in violation of G. L. (Ter. Ed.) c. 93, § 2, the State antitrust statute. The modern concept of a monopoly is a combination or organization which has acquired a position of such dominating influence in a particular branch of trade or commerce that it has a tendency to suppress competition, to regulate supply and to fix prices, all to the detriment of the public, in respect to some commodity which the people must have in order to satisfy an essential need of ordinary living. *United Shoe Machinery Co.* v. *La Chapelle,* 212 Mass. 467, 480. *Commonwealth* v. *Dyer,* 243 Mass. 472, 486. *Robitaille* v. *Morse,* 283 Mass. 27, 33. The statute, c. 93, § 2, does not apply to all combinations or agreements that are contrary to the common law, but applies only to those that create or maintain a monopoly in the manufacture, production, transportation, or sale in this Commonwealth of an article or commodity in common use, or that restrain or prevent competition in

this Commonwealth in the supply or price of such article or commodity, or that restrain or prevent the free pursuit in this Commonwealth of any lawful business, trade or occupation for the manufacture, production, transportation or sale of such article or commodity. *Commonwealth* v. *North Shore Ice Delivery Co.* 220 Mass. 55. *Quincy Oil Co.* v. *Sylvester,* 238 Mass. 95. *Berenson* v. *H. G. Vogel Co.* 253 Mass. 185. *Keith* v. *Heywood Boot & Shoe Co.* 255 Mass. 321. The question arises whether tickets of admission to public theatrical performances are articles of necessity within the common law concept of a monopoly or whether they are articles or commodities in common use within the terms of § 2. Such a ticket is a mere personal privilege permitting one to witness a public performance and is revocable at the will of the proprietor of the theatre, *Burton* v. *Scherpf,* 1 Allen, 133; *Opinion of the Justices,* 247 Mass. 589; *Marrone* v. *Washington Jockey Club,* 227 U. S. 633; *People* v. *Flynn,* 189 N. Y. 180, and the proprietor is not bound to admit everybody who presents a ticket — apart from discrimination on account of race or color forbidden by G. L. (Ter. Ed.) c. 272, § 98, as amended by St. 1934, c. 138 — *Stager* v. *G. E. Lothrop Theatres Co.* 291 Mass. 464; *Woollcott* v. *Shubert,* 217 N. Y. 212, and he may attach reasonable restrictions in the use of the tickets and refuse admission to those who pay more than the price printed upon the ticket or who purchase them from a ticket broker or speculator. *Purcell* v. *Daly,* 19 Abb. N. C. 301. *Collister* v. *Hayman,* 183 N. Y. 250. *Harris* v. *Jack's Theatre Ticket Service, Inc.* 139 Misc. (N. Y.) 111. *Levine* v. *Brooklyn National League Baseball Club, Inc.* 179 Misc. (N. Y.) 22. *Finnesey* v. *Seattle Baseball Club, Inc.* 122 Wash. 276. It has been said that witnessing a theatrical performance is not a necessity of life. *People* v. *Thompson,* 283 Ill. 87. *People* v. *Klaw,* 55 Misc. (N. Y.) 72, 89. Theatre tickets, however, are articles in common use, and the statute, § 2, specifically includes articles in common use. *People* v. *Epstean,* 102 Misc. (N. Y.) 476. It was held in *Merchants Legal Stamp Co.* v. *Murphy,* 220 Mass. 281, that trading stamps and trading stamp books were articles

within the statute.  There is, of course, a great difference between theatre tickets and trading stamps.  In view of the conclusion we reach, we assume in favor of the plaintiff, without deciding, that tickets are articles within the statute.

It is a general rule of pleading that one who asserts a claim that he was injured through the establishment and maintenance of a monopoly either at common law or under a statute must set forth definitely and specifically the substance of the agreement which he asserts the defendants have entered into or the plan or scheme which the defendants have adopted, the several acts performed by the defendants, the effect of such acts upon the plaintiff or his business, and the resulting damage to the public, in order that the court may determine from the facts alleged whether a monopoly at common law or in violation of the statute has been properly alleged with the result that, if the facts are proved, the plaintiff would be entitled to prevail.  It is not sufficient to allege the existence of a monopoly or merely to repeat the words of a statute or to recite mere conclusions of the pleader.  Conclusions of fact unless they are necessary inferences from the particular facts alleged are not admitted by a demurrer.  *Johnson* v. *East Boston Savings Bank,* 290 Mass. 441.  *Comerford* v. *Meier,* 302 Mass. 398.  *Thompson* v. *Spagnuolo,* 311 Mass. 597.  *Robichaud* v. *Owens-Illinois Glass Co.* 313 Mass. 583.  *Becker* v. *Calnan,* 313 Mass. 625, 630–631.  *Alexander Milburn Co.* v. *Union Carbide & Carbon Corp.* 15 Fed. (2d) 678.  *Glenn Coal Co.* v. *Dickinson Fuel Co.* 72 Fed. (2d) 885.  *Powell* v. *Graham,* 183 Wash. 452.  It was said in *Neustadt* v. *Employers' Liability Assurance Corp. Ltd.* 303 Mass. 321, 326, that "the general allegation that the combination and agreement are 'unlawful and illegal' is insufficient, as matter of pleading, to state a cause of action in tort,'" and in *Walter* v. *McCarvel,* 309 Mass. 260, 264, that the allegation that "'said contract' has resulted in an unlawful monopoly and illegal restraint of trade" was not admitted by the demurrer.

With these general principles in mind, we pass to a brief analysis of the bill of complaint.  The bill does not in terms

or by necessary implication allege that the defendants or any of them have limited the supply of tickets, or that the entire supply was not available to those who desired to purchase them, or that at the time the bill was filed the public was required, or would in the future be required, to pay an unreasonable price or any price in excess of that prescribed by G. L. (Ter. Ed.) c. 140, § 185D. There are no specific allegations contained in the bill which support the conclusion that the public has been or will be prejudiced by any conduct of the defendants mentioned in the bill.

The theatre owner has the control over the distribution and sale of tickets unless, as is not alleged here, it has made a different arrangement with the one producing the performance. The owner of the theatre has the right to decide for himself whether he will sell all the tickets directly to the public or whether he will save a part of them to be sold through ticket agencies which he has selected. He is not required to allot any of the tickets to any particular agency. The fact that one is licensed to resell tickets gives him no right to secure tickets for that purpose. *Neustadt* v. *Employers' Liability Assurance Corp. Ltd.* 303 Mass. 321, 326. *Collister* v. *Hayman,* 183 N. Y. 250. *Levine* v. *Brooklyn National League Baseball Club, Inc.* 179 Misc. (N. Y.) 22.

The mere fact that the plaintiff might not have been permitted to participate in the sale of the tickets to the extent or upon the terms he desired would not give him any right to maintain the bill. While an individual theatre owner had the right to refuse to deal with the plaintiff, it could not in pursuance of an arrangement made between it and other theatre owners refuse to sell tickets to the plaintiff for the purpose of damaging or destroying his business. *Robitaille* v. *Morse,* 283 Mass. 27, 32. *Comerford* v. *Meier,* 302 Mass. 398, 402. *Binderup* v. *Pathe Exchange, Inc.* 263 U. S. 291. *Locker* v. *American Tobacco Co.* 195 N. Y. 565. The difficulty with the bill is that it shows neither such a refusal nor such a purpose. It is alleged that Herrick refused to sell tickets to the plaintiff in accordance with a system in vogue during a period that ended prior to the filing of the bill. Nothing further is alleged with reference

to Herrick. The allegation that Herrick refused to sell in accordance with a former arrangement is not an allegation that Herrick absolutely refused to deal with the plaintiff or that it was not willing to deal with the plaintiff on some other terms. Herrick was only a ticket agency. As to all the other defendants who are the theatre owners, the bill simply alleged that they "continue to sell tickets for resale to the defendant, Herrick's, Inc., and refuse to sell tickets for resale in the same manner to the plaintiff." In contemplation of law, it was no concern of the plaintiff if the theatre owners allocated a few more tickets to Herrick than to the plaintiff, or granted a greater line of credit or for a longer time to Herrick than to the plaintiff, or extended minor or incidental advantages to Herrick over those given to the plaintiff. We do not know the terms and conditions upon which the tickets are allocated to Herrick. The pleader has not apprized us and we are unable to say that the refusal to sell to the plaintiff in "the same manner" was arbitrary, unreasonable or discriminatory. Furthermore, there is no allegation in the bill that the defendant theatre owners are not continuing to sell tickets to the plaintiff or that they have refused to deal with him. Every allegation in the bill is consistent with the thought that he is still purchasing tickets under conditions not shown to be inequitable or unfair. There are no allegations with reference to threats, coercion or duress. In this state of the pleadings the general conclusions with reference to the intent and purpose of the defendants or the existence of a monopoly to the damage of the plaintiff and to the injury of the public are not admitted upon a demurrer.

The allegation that the defendants have a financial interest in Herrick contrary to the provisions of G. L. (Ter. Ed.) c. 140, § 185A, as amended by St. 1941, c. 247, does not aid the plaintiff. In the first place, it is doubtful if any violation is properly alleged. The statute applies where a person having an interest as owner or otherwise in a theatrical exhibition, public show or public amusement also has an interest in the ticket agency. The bill alleges that the defendants other than Herrick maintain theatres pro-

ducing performances. This is no more than an allegation that the defendants maintain theatres in which plays are given. It is hardly an averment to the effect that these defendants produce the plays or own the plays, or that they have a pecuniary or proprietary interest in the plays. We do not intimate that, if a violation were sufficiently alleged, the plaintiff, in the absence of allegations essential to set forth a monopoly formed for the purpose of driving the plaintiff out of business and to injure the public, could maintain the bill as now framed. *O'Keefe* v. *Sheehan,* 235 Mass. 390. *Kelley* v. *Board of Health of Peabody,* 248 Mass. 165. *O'Brien* v. *Turner,* 255 Mass. 84. *Mullholland* v. *State Racing Commission,* 295 Mass. 286.

The refusal of leave to amend the bill rested in sound judicial discretion. It presents no question of law. No abuse of discretion is shown. *Urban* v. *Central Massachusetts Electric Co.* 301 Mass. 519, 524. *Keljikian* v. *Star Brewing Co.* 303 Mass. 53, 56.

*Decrees affirmed.*